# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MENDEZ, | 1:10-CV-00767 LJO BAM HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| LARRY SMALL, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Madera, following his conviction by jury trial on April 8, 2008, of first degree murder with special circumstances (Cal. Penal Code § 187). (CT[1] 280-281, 311.) On June 16, 2008, Petitioner was sentenced to serve a term of life without parole plus ten years. (CT 323.)

Petitioner filed a timely notice of appeal. On August 11, 2009, the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned

---

[1] "CT" refers to the Clerk's Transcript on Appeal.

1 decision. (See Lodged Doc. No. 4.) Petitioner then filed a petition for review in the California

2 Supreme Court. (See Lodged Doc. No. 5.) On October 22, 2009, the petition was summarily

3 denied. (See Lodged Doc. No. 5.)

4 Petitioner also filed a petition for writ of habeas corpus in the California Supreme Court

5 on September 25, 2009. (See Lodged Doc. No. 6.) The petition was denied on March 10, 2010,

6 with citation to People v. Duvall, 9 Cal.4th 464, 474 (1995).

7 Petitioner filed the instant federal habeas petition in this Court on April 23, 2010,

8 presenting the following three claims for relief: 1) He alleges he received ineffective assistance

9 of counsel; 2) He contends the admission of his co-defendant's statement to the police violated

10 his federal constitutional right of confrontation; and 3) He claims his sentence constitutes cruel

11 and unusual punishment. On February 4, 2011, Respondent filed an answer to the petition.

12 Petitioner did not file a traverse.

## STATEMENT OF FACTS[2]

Theodore Betts and Gabriel Martin lived together in a remote area of Raymond, Madera County. Martin and Betts had a large amount of marijuana at their home. On March 21, 2005, an SUV pulled into Martin and Betts's driveway. A young woman, Marissa Rubianes, was driving.

Rubianes asked Martin if he knew of an apartment or house for rent in the area. Martin said he did not and asked her to turn the car around and leave. As Rubianes started to back up, two men, Anthony Burciaga and [Petitioner], jumped out of the back of the SUV holding guns. Burciaga ordered Martin to keep his dog away and told Martin to walk back toward the house. Burciaga was pointing a shotgun at Martin.

When Martin, Burciaga, and [Petitioner] got close to the house, Betts came out with a shotgun. Burciaga shoved Martin and ran toward the back of the house. Betts told Martin to go get another gun and Martin ran inside the house.

Martin was inside the house reaching for a rifle when he heard a shotgun blast coming from the back of the house. Betts came inside, stating he had been shot. Martin went outside, did not see anyone, and fired a round into the air. Martin then went inside to call 911.

Officer Cliff Kirkes was the first to respond to the scene. Betts had six gunshot wounds in his left shoulder and was covered in blood from his shoulder to his feet. Betts died shortly after the paramedics arrived.

---

[2] The Fifth DCA's summary of the facts in its August 11, 2009, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the Fifth DCA.

   Deputy Roy Broomfield also responded to the scene. On his way to the house, he saw [Petitioner] and Burciaga walking down the road toward his vehicle. They were out of breath and their pants and shoes were wet and muddy. Broomfield got out of his patrol car with his weapon drawn and detained both men. Broomfield placed the men in his patrol car and continued heading toward the scene.

   On the side of the road, Broomfield and Deputy Charles Bump noticed shoe prints in the dirt. One print matched the pattern on the sole of Burciaga's shoes; the other print matched the pattern on the sole of [Petitioner]'s shoes. The deputies tracked the shoe prints to the scene of the shooting. While following the shoe print tracks, the deputies found a shotgun hidden underneath a tree limb and a handgun in a hole. The shoe prints continued up the driveway to Martin and Betts's house and went all the way around to the back of the house. A shotgun shell found at the back of the house was determined to have come from the shotgun found under the tree limb.

   On the day of the shooting, Rudy Castillo was interviewed by Detective John Grayson and provided a statement to law enforcement. Castillo's statement was recorded and a redacted version of the statement was played for the jury. The tape was redacted to omit any references to [Petitioner]. A written, redacted transcript of Castillo's statement also was provided to the jury.

   Castillo told officers that around March 2004, a friend of his had told him that he knew a man who had a lot of marijuana and that Castillo should go and get it. The friend, Bob, told Castillo that it would be easy to take the marijuana because the man who had it was in a wheelchair, could be tied up, and no one would have to be hurt. Bob said the man had 200 to 300 pounds of marijuana on the side of his house.

   About two months later in May 2004, Bob drove Castillo to the man's house to show Castillo where it was located. Later, Castillo went to the man's house by himself to be sure he remembered its location. On March 20, 2005, Castillo and Bob discussed the marijuana with Burciaga. Castillo claimed Burciaga "took care of it from there" and planned the robbery.

   On March 21, 2005, [Petitioner], Castillo, and Burciaga were in the SUV with Rubianes. A shotgun and pistol were in the car. When they got to Martin and Betts's property, Burciaga and [Petitioner] got out of the car with the weapons. Castillo was lying down on the back seat.

   Castillo heard a commotion and sat up. He saw Burciaga and [Petitioner] walking Martin toward the house. Castillo stepped out of the car. At this point, Betts came out of the house pointing a gun. Castillo heard Martin say, "no, no" to Betts.

   Castillo then turned and ran back to the SUV. About the time Castillo climbed into the car, he heard a gunshot. Castillo told Rubianes to go and she took off as they heard a second gunshot. They drove toward Madera. Castillo had Rubianes leave him by the side of the road, where law enforcement officers picked him up.

   Grayson also interviewed [Petitioner]. [Petitioner]'s interview was recorded and played for the jury. A transcript of the interview also was provided to the jury.

   When Grayson asked [Petitioner] what happened, [Petitioner] responded, "I fucked up." [Petitioner] stated he was helping Burciaga steal some marijuana and called Burciaga "the mastermind." Burciaga and he had planned to steal the marijuana for about two months. [Petitioner] stated that when Rubianes stopped the SUV, he and Burciaga climbed out. Burciaga was holding the shotgun and [Petitioner] was holding the pistol.

3

[Petitioner] claimed he was there to steal marijuana and to protect his cousin, Burciaga.

[Petitioner] was walking behind Burciaga. When he saw Betts with a gun, [Petitioner] claimed he told Burciaga to get out of the way and then he started running. As he was running, [Petitioner] heard three gunshots.

(See Lodged Doc. No. 4.)

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of Madera County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lockyer v. Andrade, 538 U.S. 63, 70 (2003); Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.  Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), *quoting* Wright v. Van Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405, *quoting* Webster's Third New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), *citing* 28 U.S.C. § 2254(e)(1). However, a state court

factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), *overruled by,* Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

III.   Review of Claims

A.   Ineffective Assistance of Counsel

Petitioner claims he received ineffective assistance of counsel for several alleged failures on the part of his various defense attorneys. First, he claims counsel failed to object to the admission of his co-defendant's statement on confrontation clause grounds. Second, he claims counsel failed to challenge his sentence as cruel and unusual punishment. Finally, he claims counsel failed to investigate or make motions in limine. Respondent claims Petitioner's assertions of failure to investigate and failure to make certain motions are unexhausted. Respondent further argues that all of the claims are meritless.

1.   Failure to Object - Confrontation Clause

Petitioner presented this claim of ineffective assistance on direct appeal to the Fifth DCA where it was rejected in a reasoned decision. (See Lodged Doc. No. 4.) Petitioner then presented the claim to the California Supreme Court in a petition for review. The petition was denied without comment on October 22, 2009. (See Lodged Doc. No. 5.) When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991). The Fifth DCA analyzed and rejected the claim as follows:

> Alternatively, [Petitioner] contends counsel was ineffective for failing to object. In order to establish ineffective assistance of counsel, [Petitioner] must demonstrate that counsel's performance was deficient *and* that he was prejudiced by counsel's performance or lack thereof. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 (*Strickland*).) Prejudice is shown when there is a "'reasonable probability that, but for counsel's unprofessional errors, the result in the proceeding would have been different.'" (*In re Avena* (1996) 12 Cal.4th 694, 721 (*Avena*).)
>
> The People concede that admission of Castillo's redacted statement with references to "they" likely was error and we agree. The confrontation clause is not violated when a statement is redacted so as to omit any reference to a codefendant or the codefendant's existence. (*Richardson v. Marsh* (1987) 481 U.S. 200, 211.) A few sentences in Castillo's redacted statement, however, referred to Burciaga and an unnamed person as "they." When Castillo's statement is combined with [Petitioner]'s statement and Martin's testimony, it is clear that [Petitioner] is the unnamed person in Castillo's

statement. (*People v. Fletcher* (1996) 13 Cal.4th 451, 469-470.)

    Even if admission of Castillo's statement was error, it was harmless beyond a reasonable doubt. (*People v. Anderson* (1987) 43 Cal.3d 1104, 1128.) [Petitioner] admitted (1) plotting the robbery for two months with Burciaga; (2) jumping out of the SUV with the pistol; and (3) that his intent was to rob Martin and Betts and protect Burciaga, his cousin. Martin testified that [Petitioner] pointed a pistol at him. [Petitioner] was arrested near the scene and his shoe prints were found at the scene of the shooting.

    The evidence of [Petitioner]'s involvement was overwhelming and included his own admissions. It is not reasonably probable that a different outcome would have been obtained but for counsel's failure to object to the manner of redacting Castillo's statement. (*Avena, supra,* 12 Cal.4th at p. 721.) Therefore, [Petitioner] has not shown that he received ineffective assistance of counsel. (*Strickland, supra,* 466 U.S. at pp. 691-692.)

(See Lodged Doc. No. 4.)

The law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Harrington v. Richter, *supra*, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Harrington, 131 S.Ct. at 787, *citing*, Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been

8

different," Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787, *quoting*, Strickland, 466 U.S. at 693. "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788, *quoting*, Strickland, 466 U.S. at 687. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.

Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. § 2254(d) is very difficult. Harrington, 131 S.Ct. at 788. Since the standards created by Strickland and § 2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so. Harrington, 131 S.Ct. at 788, *quoting*, Knowles v. Mirzayance, 556 U.S. 111, ___, 129 S.Ct. 1411, 1420 (2009).

In this case, Petitioner complains that defense counsel failed to object to the admission of his co-defendant's statement. As recited above, the appellate court determined that counsel's failure was likely error. However, the appellate court found that the error was not prejudicial in light of the overwhelming evidence of Petitioner's guilt. The appellate court's determination was not unreasonable. Petitioner's own statement inculpated him in the crime. (CT 635-636.) He stated he and his co-defendants went to the property of Martin and Betts intending to rob them of marijuana. (CT 635.) He admitted jumping out of the vehicle with a pistol and a glove. (CT 635.) He admitted approaching Martin in order to back up his co-defendant. (CT 635-636.) Martin testified that Petitioner pointed his pistol at him and his dog. (RT[3] 2642-2643, 2727-2729.) Petitioner's pistol, glove and shoeprints were found at the scene. (RT 2566-2568, 2572-2574). In light of the evidence, it is clear that Petitioner's co-defendant's statement was merely cumulative, and the jury would have returned the same verdict had the statement not been admitted. Therefore, the state court determination was not an unreasonable application of the

---

[3] "RT" refers to the Reporter's Transcript on Appeal.

1 Strickland standard.

2       2.  Failure to Object - Cruel and Unusual Punishment

3       Petitioner also faults counsel for failing to object to the sentence imposed as cruel and
4 unusual punishment.  As will be discussed below, there is no merit to Petitioner's claim that his
5 sentence constitutes cruel and unusual punishment.  Defense counsel cannot be faulted for failing
6 to raise a nonmeritorious objection.  Also, Petitioner fails to demonstrate that he suffered any
7 prejudice by counsel's alleged failure, for any objection to the sentence on cruel and unusual
8 punishment grounds would surely have been denied.

9       3.  Failure to Investigate

10       Petitioner also complains defense counsel failed to conduct proper investigation and
11 failed to file motions in limine.  Respondent correctly argues that this claim is unexhausted, and
12 in any event without merit.

13       Petitioner raised the claim in a habeas petition to the California Supreme Court. (See
14 Lodged Doc. No. 6.)  The California Supreme Court denied the petition with citation to People v.
15 Duvall, 9 Cal.4th 464, 475 (1995).  A denial with citation to Duvall indicates that the petitioner
16 has failed to allege his facts with sufficient particularity. Id; see King v. Roe, 340 F.3d 821, 823
17 (9th Cir.2003). The denial is without prejudice to bringing another habeas petition alleging facts
18 with sufficient particularity. Id. Therefore, in this case the California Supreme Court denied the
19 petition for failure to allege his claims with sufficient particularity, but the denial was without
20 prejudice to refiling with a properly pled petition.  Thus, the claim is unexhausted.

21       However, as Respondent correctly notes, the Ninth Circuit held in Kim v. Villalobos, 799
22 F.2d 1317 (9th Cir.1986), that a federal court must independently review the claims presented to
23 the California Supreme Court to determine whether they have been fairly presented.  Id. at 1320.
24 If the claims are incapable of being presented with any greater particularity, then no interest in
25 judicial efficiency or federal-state comity would be served by requiring the petitioner to return to
26 state court, and the federal court must then consider the merits of the claims.  Id. at 1321.

27       Here, Petitioner claimed in his state habeas petition to the California Supreme Court that
28 his trial attorneys "made no motions and completely failed to protect [his] rights at trial."  (See

10

Lodged Doc. No. 6.) He also claimed that his attorneys "did no investigation." (See Lodged Doc. No. 6.) Petitioner referenced a declaration from his appellate attorney which noted that Petitioner's various trial attorneys made no motions in limine and indicated that there were no notes documenting investigation. (See Lodged Doc. No. 6.) Petitioner did not state what motions counsel should have filed or how those motions would have changed the outcome of trial. He also failed to state what information would have been obtained had his attorneys conducted further investigation, and how that information would have altered the outcome. Claims of failure to investigate must identify what information would have been obtained, and how that information would have changed the result. Wade v. Calderon, 29 F.3d 1312, 1316-1317 (9th Cir.1994). Therefore, Petitioner failed to present his claims with sufficient particularity to the California Supreme Court.

For the same reasons, Petitioner's federal claim is meritless. His allegations of failure to investigate are completely conclusory, and "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 29 (9th Cir.1994); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief). Accordingly, Petitioner's claim should be rejected.

      B.  Confrontation Clause

Petitioner next claims the admission of his co-defendant's statement to the police denied him his constitutional right to confrontation. Respondent argues that the claim is procedurally defaulted and without merit.

      1.  Procedural Default

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989); See also, Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris v. Reed,

489 U.S. 255, 260-61 (1989).  This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989).  For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991).  If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v. Kentucky, 466 U.S. 341, 348-51 (1984).  The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

In this case, the appellate court rejected the claim first in accordance with California's contemporaneous objection rule, because the defense failed to object to the admission of the co-defendant's statement at trial. As noted by Respondent, California's contemporaneous objection rule is consistently applied independent of federal law. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999).

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental

1  miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501
2  U.S. at 750, 111 S.Ct. 2456; Park, 202 F.3d at 1150. In this case, Petitioner has not shown that
3  any external factor prevented defense counsel from objecting. In addition, Petitioner cannot
4  demonstrate actual prejudice resulting from the failure to object. The co-defendant's statement
5  was merely cumulative of the overwhelming evidence already before the jury.

6  Similarly, Petitioner has not demonstrated a fundamental miscarriage of justice will occur
7  if the claim is barred from federal review. The miscarriage of justice inquiry is governed by the
8  standard set forth in Murray v. Carrier, 477 U.S. 478 (1986). Murray requires a habeas petitioner
9  to show that "a constitutional violation has probably resulted in the conviction of one who is
10 actually innocent." Id. at 496. To satisfy Murray's "actual innocence" standard, a petitioner must
11 show that, in light of new evidence, it is more likely than not that no reasonable juror would have
12 found him guilty beyond a reasonable doubt. Id. Here, Petitioner makes no such showing of
13 actual innocence.

14 Accordingly, Petitioner is procedurally barred from bringing this claim. In any case,
15 Petitioner's claim is without merit.

16 2. Review of Claim

17 As previously discussed, the appellate court determined that the admission of the co-
18 defendant's statement was harmless beyond a reasonable doubt. The state court determination
19 was not unreasonable. Petitioner conceded he had gone to the property in a plan to rob Martin
20 and Betts. He admitted he had been armed with a pistol. He admitted he exited the vehicle with
21 his weapon in order to back up his co-defendant. The record also showed that Petitioner pointed
22 the weapon at Martin and his dog. In addition, Petitioner's pistol, glove and shoeprints were
23 found at the scene. In light of the overwhelming evidence of Petitioner's guilt, the alleged error
24 could not have had a "substantial and injurious effect or influence in determining the jury's
25 verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The claim should be denied.

26 C.   Cruel and Unusual Punishment

27 Petitioner claims his sentence of life without the possibility of parole plus ten years
28 constitutes cruel and unusual punishment in violation of the Eighth Amendment to the

Constitution.  Respondent argues the claim is procedurally defaulted and without merit.

This claim was raised and rejected on direct appeal.  The appellate court rendered the last reasoned decision.  The court first determined that the claim was forfeited by Petitioner's failure to object at trial.  For the reasons discussed in Ground Two above, the claim is procedurally defaulted.

The appellate court also determined that the claim was without merit, as follows:

> In determining whether punishment is constitutionally excessive, the courts examine, inter alia, the nature of the offense and the offender. (*Solem v. Helm* (1983) 463 U.S. 277, 290-291, overruled on another ground in *Harmelin v. Michigan* (1991) 501 U.S. 957, 964-965 (plur. opn. of Scalia, J.); *In re Lynch* (1972) 8 Cal.3d 410, 425-427 (*Lynch*).) A punishment that involves "unnecessary and wanton infliction of pain" or is "grossly out of proportion to the severity of the crime" violates the Eighth Amendment. (*Gregg v. Georgia* (1976) 428 U.S. 153, 173.) A punishment "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity" violates article I, section 17 of the California Constitution. (*Lynch,* at p. 424.)
>
> [Petitioner] does not provide separate analyses for federal and state constitutional challenges and most of his briefing appears to be based upon California Supreme Court cases. Furthermore, [Petitioner] does not address or provide any analysis as to whether his punishment is greater than that provided in California for more serious offenses or whether similar offenses in other states carry a less severe punishment. Therefore, we address only that aspect of the cruel and unusual argument addressed by [Petitioner]-the nature of the offense and the offender.
>
> [Petitioner] argues that at the time of the shooting he was 23 years old, with no record of criminal conduct, had a substance abuse problem, and had suffered from an unstable childhood. He compares himself to the defendant in *People v. Dillon* (1983) 34 Cal.3d 441 (*Dillon* ), where the teenage defendant was convicted of first degree felony murder and attempted robbery. (*Id.* at p. 450.) The teenager and his friends planned to steal marijuana from a nearby farm and the teenager armed himself with a .22-caliber rifle. (*Id.* at p. 451.) When things went awry, the teenager shot and killed the farmer. (*Id.* at p. 452.) The California Supreme Court reduced the sentence to second degree murder, concluding that the teenager was "an unusually immature youth"; the six other teenagers who participated in the attempted robbery received only "petty chastisements"; and, because of his youth, the teenager could not have received a harsher sentence if he had committed a premeditated murder. (*Id.* at pp. 487-488.)
>
> Granted, there are similarities between *Dillon* and [Petitioner]'s case, however, there also are significant differences. The primary difference is that in *Dillon,* the offender was an immature 17 year old. [Petitioner] was a 23-year-old adult at the time he committed his offense. Furthermore, [Petitioner] planned for weeks with Burciaga to rob Betts and Martin of the marijuana. [Petitioner] jumped out with a loaded pistol in order to confront Martin. [Petitioner] did not retreat until he saw Betts pointing a shotgun at him. Admittedly, [Petitioner] did not have a lengthy prior record at the time of the robbery and shooting. Given the serious nature of the current offense, however, the lack of a prior record is not controlling. (*People v. Gonzales* (2001) 87 Cal.App.4th 1, 17.)
>
> There is nothing about a life sentence without the possibility of parole imposed

>    upon a 23 year old that shocks the conscience when that 23 year old planned a robbery, knowingly participated in the robbery while armed with a gun, and did nothing to give aid to a man who was shot and bled to death. (*Lynch, supra,* 8 Cal.3d at p. 424.)
>
>    Nor is this a sentence that is grossly disproportionate to the crime. Betts was murdered during a robbery in which [Petitioner] was a major participant. The jury *could* have imposed a sentence of death pursuant to Penal Code section 190.3. Thus, life in prison without parole is not a penalty that is out of proportion to this offense. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 827.)

(See Lodged Doc. No. 4.)

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment. In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court discussed the state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 72. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id. The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.[4]

In Ewing v. California, 538 U.S. 11 (2003), the Supreme Court again reviewed the Supreme Court's Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view[5] that:

>    [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

---

[4] The Court recognizes that other Supreme Court cases have dealt with cruel and unusual punishment. See Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263, 276 (1980). However, these cases analyze cruel and unusual punishment in the context of recidivist statutes. In this case, Petitioner was sentenced for the current conviction.

[5] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), *citing* Solem v. Helm, 463 U.S. 277, 288 (1983).

1 Id. at 23.

2  In this case, the state court correctly applied clearly established Supreme Court precedent, and the state court's conclusions were objectively reasonable as Petitioner's sentence of life without the possibility of parole plus ten years plainly is not grossly disproportionate to the offense of first degree murder. Petitioner was an adult at the time of the crime. He planned, armed himself, and participated in the robbery which resulted in the death of one of the victims. Petitioner fails to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). The claim should be denied.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 22, 2011**            /s/ **Barbara A. McAuliffe**
                              UNITED STATES MAGISTRATE JUDGE